## Case No. 1,879.

### In re BRIGHTMAN et al.

### Ex parte COX et al.

[18 N. B. R. 566;[1] 19 Alb. Law J. 55.]

District Court, D. Massachusetts. Jan. 2, 1879.

BANKRUPTCY — COMPOSITION — CONTINUANCE OF BUSINESS—SUBSEQUENT CREDITORS.

By the terms of a resolution of composition, the bankrupts were authorized to continue their business in the firm name under the direction of a committee. The committee wrote to one C., who afterwards sold goods to the firm, that it was understood that all debts incurred after the composition should be paid in full before any payment should be made on the old indebtedness, but that the committee were not in any event to be personally liable. The business was carried on for a year, and resulted disastrously, the original assets being much diminished during that time, and no new assets acquired. *Held*, that C. was not entitled to payment in full in preference to the old creditors.

[Distinguished in Re Wells, 4 Fed. 70.]

A petition in bankruptcy was filed against L. Brightman & Sons, March 22, 1876. On the 15th of April, 1876, resolutions for composition, which had been duly passed and accepted, were ordered to be recorded. The offer was as follows: "We, L. Brightman & Sons, hereby propose to our creditors a composition of one hundred per cent. in money, to be paid in three equal installments, in one, two, and three years, respectively, after the recording of the resolution accepting such composition, the same to be secured by our notes, and by a conveyance of our partnership property, to such person or persons as may be chosen by our creditors at this meeting, in trust for all our creditors, the business to be carried on under the direction of a committee to be chosen by our creditors at this meeting." Rufus G. Norris was chosen trustee, and a part of the joint property, such as real estate and vessels, was transferred to him. John W. Fairbanks, Henry Dennis, and Benjamin F. Brightman were appointed a committee, as provided in the resolution.

The business was that of catching the fish called "porgies," and manufacturing them into oil and other marketable products, for which the firm had facilities and vessels and other appliances at Tiverton, in Rhode Island, and at Bristol, in Maine. After the composition was made, the business was carried on for a year by B. F. Brightman, one of the committee and one of the bankrupts, in the same way and under the same firm name as before. Large debts were contracted, and many of them were paid out of sales and receipts, but some of them remained unpaid when the year expired. At this time the first instalment was not paid, and the partners were adjudged bankrupt, and assignees were chosen.

---

[1] [Reprinted from 18 N. B. R. 566, by permission.]

This was a petition by A. F. Cox and Son, for payment in full for goods bought by the firm during the year after the composition was accepted. Before selling the goods, the petitioners received a letter from Dennis and Brightman, two of the committee, in which they said, amongst other things: "Under the order of the court, Messrs. L. Brightman & Sons are fully authorized to carry on their business under our direction, and it is understood that all debts incurred by them after March 22, 1876, are to be paid in full before any payment is made on the old indebtedness; but Messrs. Fairbanks and Dennis are not in any event to be personally responsible for any of said debts, the limit of their liability being to direct the business according to the composition." The business was disastrous, and the assets originally held by the bankrupts were much diminished during the year, and nothing came to the hands of the assignees which had been acquired during that time.

W. F. Putnam, for petitioners, cited: Tucker v. Hernaman, 4 De Gex, M. & G. 395; Ex parte Ford, 1 Ch. Div. 521; Ex parte Charlton, 6 Ch. Div. 45.

T. F. Nutter, for assignees.

LOWELL, District Judge. The facts present a case of great hardship for the petitioners. The old creditors of L. Brightman & Sons permitted the firm to trade, and it was necessary that they should contract some debts in carrying on the business. If these necessary debts had been paid, as many of them were, out of the receipts, or even out of the capital, I do not know that any one could complain. It is hard that chance, or the neglect or whim of the debtors, or even the exhaustion of the available assets, should have the effect of putting some of the new creditors in the position which the petitioners occupy. I regret to say that I cannot find the law which will give these new creditors a lien on the old property. If the trustee had been duly authorized to carry on the business, and had contracted proper debts, he would have had a lien for his indemnity, and so of the committee; but the arrangement was that the debtors might pursue their usual business for a year, unless the committee should interpose, and that certain joint property would not be sold in the usual course of business—such as vessels—should be put into the hands of a trustee for safe keeping. The answer of the assignees alleges that the separate real estate of L. Brightman was left with the bankrupts to enable them to raise money for the business, and that it was mortgaged for that purpose. This mortgage was paid during the year out of the receipts of the business or of the assets. The result seems to be that the debtors were to go on as before, and I cannot see that

the old creditors impliedly understood that the debts should be paid. Two of the committee wrote to the petitioners that it was understood that the new debts were to be paid in full; but they disclaimed all personal responsibility, and it is admitted that they had no authority to give an equitable lien on the assets, and that they have not effected such a lien by this letter. It must be taken as a statement of what the debtors intended and expected to do.

The cases cited from the English books are not much like this. They hold that while the assignees, under the then existing provisions of the law, were entitled to all the after-acquired property of an undischarged bankrupt, yet if they permitted him to go on and trade as a free man, they would be estopped to claim such newly-acquired property, obtained by trade, against a creditor who had no knowledge of the bankruptcy, and were pressing a remedy by execution or by a fresh bankruptcy against such new property. There must be some laches on the part of the assignees, and a concurrent deception of the persons dealing with the bankrupt, to bring about this equity.

Several of the elements of the estoppel are wanting here. None of the assets were acquired in the new trade, nor have the creditors held out the bankrupts as capable of contracting, excepting as the resolutions gave them a year in which to pay the first instalment, and as the exact state of matters was fully known to the persons dealing with the bankrupts, the single question is, whether the resolutions bind the old creditors to such a consequence.

Now I understand it to be admitted that by the English law, which we have imitated in a large measure, there would be no such right as is here claimed. The cases above referred to were none of them cases of composition, but of trading, for a long time after an ordinary bankruptcy. A letter of license, or a covenant not to sue, appears to be the nearest analogy to a resolution like this. It must be remembered that the mere acceptance of the resolution, with nothing in it about a trustee or a committee, would probably have operated in the same way as these resolutions—that is, as a license to trade for a year. The appointment of these persons was only a precaution intended to keep some control against fraud or recklessness, and does not bind the creditors, or the committee, or the trustee, to the new creditors, and for that reason does not bind the property.

I do not wish to be understood as deciding that the new debts may not be proved pari passu with the old debts. This point was not argued, and I can conceive that a question of estoppel might be made with some force in that direction. I believe I have never decided that point, though I may have said something about it. Petition dismissed without costs.